# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

In the Matter of the Search of
(Name, address or brief description of person, property, or premises to be searched)

**District of Columbia Public Schools**
**Office of Professional Development Logan Annex**
**215 G Street, NE, Washington, DC, First Floor, Room 108**
**The workspace of DCPS employee RaShelle Henderson**

**APPLICATION AND AFFIDAVIT FOR SEARCH WARRANT**

CASE NUMBER:

(Further described below)

I ____ELLEN RIPPERGER____ being duly sworn depose and say:

I am a(n) <u>Special Agent with the United States Secret Service</u> and have reason to believe
   (Official Title)
that ☐ on the person of or ☒ on the property or premises known as (name, description and or location)

**District of Columbia Public Schools, Office of Professional Development, Logan Annex, 215 G Street, NE, Washington, DC, First Floor, Room 108, The workspace of DCPS employee RaShelle Henderson**
See Attached Affidavit

in the District of Columbia, there is now concealed a certain person or property, namely (describe the person or property to be searched)

See Attachments A, B, and the affidavit submitted in support of the application for this warrant which are incorporated herein by reference.

which is (state one or more bases for search and seizure set forth under Rule 41(b) of the Federal Rules of Criminal Procedure)
evidence and instrumentalities of crime and other contraband and property designed or intended for use as a means of committing a criminal offense.
concerning a violation of Titles <u>18</u> United States Code, Section(s) <u>1028.</u> The facts to support a finding of Probable Cause are as follows:

SEE ATTACHED AFFIDAVIT HEREIN INCORPORATED BY REFERENCE AS IF FULLY RESTATED HEREIN

Continued on the attached sheet and made a part hereof.    ☒ YES   ☐ NO

Steven Durham
Fraud and Public Corruption/5th Floor
(202) 514-8316

Signature of Affiant
ELLEN RIPPERGER, Special Agent
United States Secret Service

Sworn to before me, and subscribed in my presence

_____    at Washington, D.C.
Date

_____    _____
Name and Title of Judicial Officer     Signature of Judicial Officer

<u>AFFIDAVIT IN SURRPORT OF SEARCH WARRANT FOR:</u>

District of Columbia Public Schools
Office of Professional Development
'Logan Annex'
215 G Street, NE, Washington, DC
First Floor, Room 108
The work space of DCPS employee RaShelle Henderson

I, Special Agent Ellen Ripperger, being duly sworn, depose and state as follows:

**I.     Introduction**
1.     I am a Special Agent (hereafter "SA") with the United States Secret Service (hereafter "USSS") and have been employed by the USSS since October 9, 2001.  I have received formal training in the investigation of financial crimes, including access device fraud, the counterfeiting of United States monetary obligations and securities, and identity theft.  I was formally trained as a Criminal Investigator at the Federal Law Enforcement Training Center in Glynco, Georgia, and as a Special Agent at the USSS's James J. Rowley Training Center in Beltsville, Maryland.  During my tenure, I have investigated cases involving check fraud, the counterfeiting of United States monetary obligations and securities, access device fraud, identity theft, and bank fraud.  I am currently assigned to the USSS Washington Field Office, Metro Area Fraud Task Force and investigate violations of federal laws, including violations of 18 U.S.C. § 1028.

2.     The information contained in this affidavit is based on: (1) my personal knowledge and observations made by me during the course of this investigation; (2) information conveyed to me by other law enforcement officials, financial institution personnel, and other witnesses; (3) my review of other evidence obtained during the investigation.  Since this affidavit is submitted for the limited purpose of establishing probable cause, I have not set forth each and every fact I know regarding this investigation.

3.     This affidavit contains information necessary to support probable cause for a search warrant of the work space of RaShelle Henderson (to include her work computer) Support Assistant, District of Columbia Public Schools, 'Logan Annex', 215 G Street, NE, 1st Floor, Room 108, Washington, DC 20002 (as described in Attachment A), charging that Henderson, who is assigned to this particular work space, is involved in an ongoing scheme to defraud

1

individuals and institutions in violation 18 U.S.C. § 1028, and did with intent "…knowingly transfer or use, without lawful authority, a means of identification of another person with the intent to commit, or to aid or abet, any unlawful activity that constitutes a violation of Federal law, or that constitutes a felony under any applicable State or local law". Furthermore, there is probable cause to believe that evidence, fruits and instrumentalities of these offenses, (as described in Attachment B) will be found in the work space of Rashelle Henderson (to include her work computer) Support Assistant, District of Columbia Public Schools, 'Logan Annex', 215 G Street, NE, 1st Floor, Room 108, Washington, DC 20002.

II.     **Details of Probable Cause for Search Warrant**

4.      It is believed that on or about 1/10/07, Tashana Crews used the social security number and a misspelled version of Dina Carbajal-Palacios's name - Dina Palcios - stolen from the District of Columbia Public Schools, to apply for credit with Wells Fargo Financial to finance a purchase on the internet website www.music123.com. On the credit application with Wells Fargo and on the purchase order with www.music123.com, Crews used her home address, 4364 7th Street, SE, #201 Washington, DC 20032, as the shipping address for the merchandise. The order, in the amount of $1991.96 was shipped via FedEx, tracking numbers 732938519450 and 732938519440, to 4364 7th Street, SE #201, Washington, DC 20032, and signed for on 1/18/07 under the name 'M. Hill.'

5.      On 2/26/07, I interviewed Dina Carbajal-Palacios, an educational aide at H.D. Cooke Elementary School in the District of Columbia, who stated that numerous fraudulent credit accounts had been established in a misspelled version of her name using her social security number without her knowledge or permission. Carbajal-Palacios stated that in late November or early December she turned in Praxis test paperwork to the administrative offices of the District of Columbia Public Schools - her employer. Carbajal-Palacios stated that the Praxis paperwork contained her date of birth and social security number. Carbajal-Palacios was unable to remember any other time in recent history where she provided her personal identifiers to anyone. Carbajal-Palacios further stated that shortly after turning the Praxis paperwork in, she received a call from an individual employed with a jewelry store who was attempting to verify a credit account in the name Dina Palcios. As a result of this telephone call, Carbajal-Palacios ran her credit report and saw that numerous accounts had been opened in her name, and that numerous attempts to obtain credit were also made.

2

6. On 2/26/07, I also interviewed Eva Hellebruyck, an educational aide at Bell Muticultural School in the District of Columbia, who also stated that she had turned in her Praxis paperwork to the administrative offices of the District of Columbia Public Schools at the same time Carbajal-Palacios did. Hellebruyck ran her credit report and found that credit accounts had been established in her name without her knowledge or permission. But for the Praxis paperwork, Hellebruyck could not remember a time in recent history where she provided her personal identifiers to anyone.

7. On 4/19/07, a search warrant was executed at 4364 7th Street, SE #201, Washington, DC, which is the residence of Tashana Crews. Recovered in the warrant were numerous documents in the name of Dina Palcios, some in the name of Eva Hellebruyck, and Praxis Score reports for ten different individuals, all of whom appear to be employed by the District of Columbia Public Schools.

8. Subsequent to the search warrant on 4/19/07, Crews agreed to be interviewed. During this interview, Crews stated that the identifiers of 'Palcios' and others had been sent to her by RaShelle Henderson, a friend who is employed with the District of Columbia Public Schools, who was sharing Crews' personal email account - nikeboothoney@yahoo.com - to send the information. Numerous computer printouts of a Yahoo mail account under the address nikehoothoney@yahoo.com containing the personal identifiers of 'Dina Palcios' and numerous other individuals were recovered during the execution of the search warrant. A subpoenaed IP address log of the nikeboothoney@yahoo.com account shows that the IP address of 166.91.254.254, which is registered to the District of Columbia Public Schools, appeared numerous times supporting Crews' claim that Henderson used Crews' personal email account while at work. This IP address has also been the registered IP address for numerous fraudulent transactions via the internet. Crews explained that Henderson would obtain the personal identifiers, email them to her, and then Crews would order items for herself on the internet. Crews stated that on one occasion she went to the District of Columbia Public Schools office at 215 G Street, NE, Washington, DC, to pick up paperwork from Henderson containing the stolen personal identifiers of District of Columbia Public Schools personnel.

9. On 5/18/07, Detective Charlie Pak, Alexandria Police Department, and I went back to interview Tashana Crews. When we arrived at Crews' apartment, she produced a large box sent from the women's apparel company Newport News, and stated that Henderson had ordered it and had it shipped to her house. The order had been placed in the name of 'Holly

3

Bawk'. Crews then made a consensual phone call to Henderson. Crews asked Henderson about the package and the name the package was ordered in. Henderson stated that the name on the box was an alias. Henderson also asked her about a pair of shoes that were in the box that were a large size. Henderson stated that she had to order a larger size because they run small. Henderson subsequently agreed to come to Crews' house to pick up the box. Henderson also agreed to send more fraudulent information to Crews. Shortly thereafter, Crews drove to my office with the box. Detective Pak again checked the contents of the box, which included two pairs of shoes, a pair of pajamas, and a jumper. Before Crews drove with the box to Henderson's office at 215 G Street, NE, Washington, DC, we put blue tape on the box so that we could easily identify it. Crews drove to 215 G Street and went inside to meet an unsuspecting Henderson. Both Henderson and Crews were subsequently observed talking in the parking lot. We further observed Crews put the box with the blue tape in the back seat of Henderson's green 1995 Oldsmobile. After the transaction was complete and Henderson took constructive possession of the box, we interviewed Crews. Crews stated that Henderson refused to take possession of the box herself because she was aware that the parking lot had many cameras. Henderson's car remained under surveillance; at approximately 5:30pm, Henderson was observed getting into the car and leaving the District of Columbia Public Schools Parking lot with the box in her back seat.

      10.    On 4/24/07, District of Columbia Office of the Inspector General Special Agent Thomas Trimble confirmed that RaShelle Henderson is employed with the District of Columbia Public Schools. And on 5/22/07, Agent Trimble confirmed that Henderson worked for the District of Columbia Public Schools at the G Street location, which is referred to as the 'Logan Annex'.

      11.    On 5/1/07, Tashana Crews made a consensual phone call to RaShelle Henderson which was recorded by the USSS. The number called by Crews was (202)673-8314. Agent Trimble confirmed that this is a District of Columbia Public Schools telephone extension.

### III.  Search of Henderson's Assigned Work Computer

      12.    Based upon my training, experience and information related to me by agents and others involved in the forensic examination of computers, I know that computer data can be stored on a variety of systems and storage devices including hard disk drives, floppy disks, compact disks, magnetic tapes and memory chips. I also know that during the search of the

4

premises it is not always possible to search computer equipment and storage devices for data for a number of reasons, including the following:

13. Searching computer systems is a highly technical process which requires specific expertise and specialized equipment. There are so many types of computer hardware and software in use today that it is impossible to bring to the search site all of the necessary technical manuals and specialized equipment necessary to conduct a thorough search. In addition, it may also be necessary to consult with computer personnel who have specific expertise in the type of computer, software application or operating system that is being searched.

14. Searching computer systems requires the use of precise, scientific procedures which are designed to maintain the integrity of the evidence and to recover "hidden," erased, compressed, encrypted or password-protected data. Computer hardware and storage devices may contain "booby traps" that destroy or alter data if certain procedures are not scrupulously followed. Since computer data is particularly vulnerable to inadvertent or intentional modification or destruction, a controlled environment, such as a law enforcement laboratory, is essential to conducting a complete and accurate analysis of the equipment and storage devices from which the data will be extracted.

15. The volume of data stored on many computer systems and storage devices will typically be so large that it will be highly impractical to search for data during the execution of the physical search of the premises. A single megabyte of storage space is the equivalent of 500 double-spaced pages of text. A single gigabyte of storage space, or 1,000 megabytes, is the equivalent of 500,000 double-spaced pages of text. Storage devices capable of storing fifteen gigabytes of data are now commonplace in desktop computers. Consequently, each non-networked, desktop computer found during a search can easily contain the equivalent of 7.5 million pages of data, which, if printed out, would completely fill a 10' x 12' x 10' room to the ceiling.

16. Computer users can attempt to conceal data within computer equipment and storage devices through a number of methods, including the use of innocuous or misleading filenames and extensions. For example, files with the extension ".jpg" often are image files; however, a user can easily change the extension to ".txt" to conceal the image and make it appear that the file contains text. Computer users can also attempt to conceal data by using encryption, which means that a password or device, such as a "dongle" or "keycard," is necessary to decrypt the data into readable form. In addition, computer users can conceal data within another seemingly

5

unrelated and innocuous file in a process called "steganography." For example, by using steganography a computer user can conceal text in an image file which cannot be viewed when the image file is opened. Therefore, a substantial amount of time is necessary to extract and sort through data that is concealed or encrypted to determine whether it is evidence, contraband or instrumentalities of a crime.

### IV.     Request for Search Warrant

17.     Based on the above information, I submit that probable cause exists to believe that evidence, fruits and/or instrumentalities of identity theft, in violation 18 U.S.C. § 1028, are present in the work space of RaShelle Henderson (to include her work computer) Support Assistant, District of Columbia Public Schools, 'Logan Annex', 215 G Street, NE, 1st Floor, Room 108, Washington, DC 20002.

_____

Special Agent Ellen Ripperger
United States Secret Service

Sworn to and subscribed before me this _____ day of May, 2007

_____

United States Magistrate Judge
District of Columbia

6

**ATTACHMENT A – LOCATION TO BE SEARCHED**

The District of Columbia Public Schools 'Logan Annex' is located at 215 G Street, NE, Washington, DC 20002.  The 'Annex' sits on the south side of the District of Columbia Public Schools property between 2nd and G Streets, NE, directly across from the old brick school building which shares the property with the 'Annex'.  The 'Annex' is a white paneled building, with numerous windows, and a dark red roof.  The entrance to the 'Annex' is through two glass doors.  Numbers 215 are printed on the left front glass door.  Henderson's office is room 108, which is five doors down from the main entry on the right side of the hallway.  There is a black sign with white lettering above the door which reads '#108'.

**ATTACHMENT B – ITEMS TO BE SEIZED**

I. **COMPUTER SEARCH**

    A.    As used above, the terms records, documents, programs, applications or materials includes records, documents, programs, applications or materials created, modified or stored in any form.

    B.    In searching for data capable of being read, stored or interpreted by a computer, law enforcement personnel executing this search warrant will employ the following procedure:

    C.    Upon securing the premises, law enforcement personnel trained in searching and seizing computer data (the "computer personnel") will make an initial review of any computer equipment and storage devices to determine whether these items can be searched on-site in a reasonable amount of time and without jeopardizing the ability to preserve the data.

    D.    If the computer equipment and storage devices cannot be searched on-site in a reasonable amount of time, then the computer personnel will determine whether it is practical to copy the data during the execution of the search in a reasonable amount of time without jeopardizing the ability to preserve the data.

    E.    If the computer personnel determine it is not practical to perform an on site search or make an on-site copy of the data within a reasonable amount of time, then the computer equipment and storage devices will be seized and transported to an appropriate law enforcement laboratory for review. The computer equipment and storage devices will be reviewed by appropriately trained personnel in order to extract and seize any data that falls within the list of items to be seized set forth herein.

    F.    Any data that is encrypted and unreadable will not be

returned unless law enforcement personnel have determined that the data is not (1) an instrumentality of the offense, (2) a fruit of the criminal activity, (3) contraband, (4) otherwise unlawfully possessed, or (5) evidence of the offense specified above.

G. In searching the data, the computer personnel may examine all of the data contained in the computer equipment and storage devices to view their precise contents and determine whether the data falls within the items to be seized as set forth herein. In addition, the computer personnel may search for and attempt to recover "deleted," "hidden" or encrypted data to determine whether the data falls within the list of items to be seized as set forth herein.

H. If the computer personnel determine that the computer equipment and storage devices are no longer necessary to retrieve and preserve the data, and the items are not subject to seizure pursuant to Federal Rule of Criminal Procedure 41(b), the government will return these items within a reasonable period of time not to exceed 60 days from the date of seizure.

I. In order to search for data that is capable of being read or interpreted by a computer, law enforcement personnel will need to seize and search the following items, subject to the procedures set forth above:

J. Any computer equipment and storage device capable of being used to commit, further or store evidence of the offense listed above;

K. Any computer equipment used to facilitate the

9

transmission, creation, display, encoding or storage of data, including word processing equipment, modems, docking stations, monitors, printers, plotters, encryption devices, and optical scanners;

**L.**   Any magnetic, electronic or optical storage device capable of storing data, such as floppy disks, hard disks, tapes, CD-ROMs, CD-R, CD-RWs, DVDs, optical disks, printer or memory buffers, smart cards, PC cards, memory calculators, electronic dialers, electronic notebooks, and personal digital assistants;

**M.**   Any magnetic, electronic or optical storage device capable of storing data, such as floppy disks, hard disks, tapes, CD-ROMs, CD-R, CD-RWs, DVDs, optical disks, printer or memory buffers, smart cards, PC cards, memory calculators, electronic dialers, electronic notebooks, and personal digital assistants;

**N.**   Any documentation, operating logs and reference manuals regarding the operation of the computer equipment, storage devices or software.

**O.**   Any applications, utility programs, compilers, interpreters, and other software used to facilitate direct or indirect communication with the computer hardware, storage devices or data to be searched;

**P.**   Any physical keys, encryption devices, dongles and similar physical items that are necessary to gain access to the computer equipment, storage devices or data; and

**Q.**   Any passwords, password files, test keys, encryption codes or other information necessary to access the computer equipment, storage devices or data.

**II**.   **RECORDS/DOCUMENTS/MATERIALS**

**A.** Search the desk and surrounding area for any evidence relating to identity theft as described in this application and seize any assets related to credit card fraud and identity theft, and;

**B.** Search and seize records, documents, and materials containing information of past and present criminal activity. The terms "records," "documents," and "materials" include records in all forms, such as those on paper, in any photographic form, in any mechanical form including, but not limited to, any handmade form (such as writing, drawing, painting, with any implement on any surface, directly or indirectly); any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, photocopies); any mechanical form (such as tape recordings, cassettes, as well as printouts or readouts from any magnetic storage device), and any form that is stored in electronic or magnetic form on hard drives, compact disks, zip disks, magnetic tapes or floppy disks, and;

**C.** Seize any applications for credit, check cashing privileges, supermarket cards or similar applications not in the lawful possession of the occupant, and;

**D.** Seize any financial instrument such as checks, money orders, wire transfers, credit cards, or other similar devices not lawfully in the possession of the occupant, and;

**E.** Seize any documents belonging to or relating to any bank or credit card company, their customers, their vendors, or similar suppliers of bank property, and;

**F.** Search and seize any ledgers, books, records, correspondence, applications, facsimile transmissions, notes or receipts relating to expenditures to include the acquisition, conversion, movement, transfer, and disbursement of monies, funds, and financial instruments.

**G.** Search and seize bank statements, deposit slips, canceled checks and related records, credit cards, gift cards, money drafts, letters of credit, wire

transfers, money orders and cashier's checks and receipts, treasurer's checks, bills of sale, installment contracts, real estate records, passbooks, bank checks, safe deposit box contracts and keys, money wrappers, and any other items evidencing the obtaining, secreting, transferring, concealment, and/or expenditure of illegal proceeds.

  **H.**  Search and seize addresses and/or telephone books, rolodex indices, and any papers reflecting names, addresses, telephone numbers, pager numbers, and fax numbers of financial institutions, and other individuals or businesses with whom a financial relationship exists.

**I.** Search title and lien records, purchase or lease agreements.

  **J.**  Seize any and all fruits, instrumentalities, and evidence of crimes related to identity theft to include but not limited to any and all identification documents and/or records.

  **K.**  Seize any items purchased with a credit card not lawfully in the possession of the occupant to include, but not limited to, electronics, cellular telephones, and gift cards.

  **L.**  Open and search any safes, boxes, bags, compartments, or things in the nature thereof, locked or otherwise, found in said vehicle;

  **M.**  Seize, open, and search all evidence, namely: mail, records, receipts, notes, ledgers, and other papers relating to financial crime and hidden assets, to include: bank statements, checks, checkbooks, deposit slips, money drafts, letters of credit, wire transfers, money orders, cashiers checks, pass books birth certificates and any other forms of identification, and any other items evidencing the secreting, transfer, concealment and expenditure of money;

  **N.**  Seize Social Security Administration documents, including Social Security Cards and/or applications for Social Security Cards that appear to be

12

related to individuals other then the residents, and;

O. Seize all cell phones, pagers, telephone records and bills that might evidence phone calls to and from co-conspirators banks/victims, and seize any of these records that might be pertinent to this investigation, and;

P. Examine all telephone books, both personal and commercially printed, particularly if the books are marked in any fashion which suggests that calls were made to associates, and seize any such books that appear to be pertinent to this investigation, and;

Q. Seize any receipts or other documents of any sort that appear to be related to the initial purchase, subsequent trade or resale of any stocks, bonds, mutual funds, annuities, insurance policies and/or goods unlawfully purchased with monies obtained via this fraudulent scheme, and;

R. Examine any fax machines, caller ID terminals, pagers, printers, scanners, embossing machines, encoding machines, typewriters, manual or electronic equipment or components, i.e. Personal Computers, used to print and store information, and seize any such items that appear to be pertinent to this investigation, and;

S. Seize travel records, including but not limited to, passports, visas, airline tickets, boarding passes, and airline ticket receipts, and;

T. Seize United States currency in large denominations, and;

U. Seize photographs that are pertinent to this investigation.

14

15